{¶ 1} Defendant-appellant Marlon Townsend appeals from his convictions for two counts of drug trafficking with major drug offender specifications and one count of possession of drugs with a major drug offender specification. In this appeal, he complains about the sufficiency and weight of the evidence. We conclude that the state's evidence amply established the requisite elements of trafficking and possession. We likewise conclude that the jury's verdict is consistent with the weight of the evidence. We therefore affirm.
 {¶ 2} An informant told the police that he could buy 125 grams of crack cocaine from appellant, whom he knew by the nickname "Toe." The police decided to set up a controlled buy, whereby an informant would use "flash money" — money used to show that the informant can complete the transaction. The police would wire the informant with a radio in order to monitor the transaction. Once the informant actually saw the drugs, he would give a prearranged signal for the officers to move in for an arrest.
 {¶ 3} The evidence showed that the police and the informant were stationed near the parking lot of a bar — the prearranged site for the deal. Appellant left his house in the company of codefendant Demetrius Thompson. Thompson earlier pleaded guilty to drug charges stemming from this incident, acknowledging that he trafficked in drugs and sold appellant cocaine in powder form. He said that he accompanied appellant on "some business [appellant had] to take care of." *Page 4 
Thompson understood this to mean that appellant had a drug transaction to make. The two drove to the bar and parked in the parking lot. Thompson left the car and entered the bar. Appellant exited the car and approached the informant. After some conversation, the two entered appellant's car. The police continued to monitor the situation by radio until they heard the informant give the officers the prearranged signal.
 {¶ 4} As the officers moved in to make the arrest, appellant fled in the car. After driving wildly for a short distance, appellant stopped the car, tore off the temporary license tag on the car, and fled on foot. One of the officers giving chase to appellant saw him drop the temporary license tag, while another officer giving chase saw appellant throw a small bag containing crack cocaine on the ground. While officers were chasing appellant on foot, another officer searched appellant's car and found a second, much larger bag of crack cocaine on the driver's side floor of the car. The bag thrown on the ground contained 5.05 grams of crack cocaine, while the bag found in the car contained 113 grams of crack cocaine.
 I {¶ 5} Appellant first argues that the state failed to produce sufficient evidence to show that he possessed the crack found in the car after he had been apprehended. He maintains that there was no evidence to show that the bag belonged to him, and that it could easily have belonged to codefendant Thompson, who admitted to being a drug dealer. *Page 5 
 {¶ 6} When reviewing a claim that there is insufficient evidence to support a conviction, we view the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The state may show constructive possession of drugs by circumstantial evidence alone. State v. Trembly (2000),137 Ohio App.3d 134, 141. Circumstantial evidence is defined as "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *" State v. Nicely (1988),39 Ohio St.3d 147, 150, quoting Black's Law Dictionary (5 Ed. 1979) 221. It possesses the same probative value as direct evidence, being indistinguishable so far as the jury's fact-finding function is concerned. Jenks, 61 Ohio St.3d at 272. All the jury need do is weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Id.
 {¶ 7} R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." The evidence showed that the crack cocaine recovered from the car weighed nearly 124.11 grams at the time of arrest[1]. *Page 6 
This weight was consistent with the informant's representation to the police that he had arranged to buy 125 grams of crack cocaine from appellant. Appellant's possession of the crack cocaine was also consistent with Thompson's testimony that appellant had "some business" to take care of in the parking lot. This need to conduct "business" explained why the police saw Thompson enter the bar while appellant spoke with the informant at the buy site. Finally, appellant's flight from the police showed "consciousness of guilt." State v. Taylor (1997),78 Ohio St.3d 15, 27, 1997-Ohio-243, citing State v. Eaton (1969),19 Ohio St.2d 145, paragraph six of the syllabus. Reasonable minds could view all of these facts to conclude that the state proved the essential elements of drug possession.
 II {¶ 8} Appellant next argues that the jury's verdict is against the manifest weight of the evidence. He maintains that Thompson's testimony was suspect because of his past history as a drug dealer and his plea bargain with the state gave him a motive to lie. He also points to some perceived deficiencies in the police investigation.
 {¶ 9} When reviewing a claim that a verdict is against the manifest weight of the evidence, we weigh all the reasonable inferences, consider the credibility of witnesses and, in considering conflicts in the evidence, determine whether the jury *Page 7 
clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. SeeState v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, we remain mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. This gives the trier of fact the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 10} Appellant's attempts to cast blame on Thompson are unavailing. It is true that Thompson received a seven-year sentence as a result of his guilty plea and agreed to testify for the state. Nevertheless, his testimony could be independently corroborated by other facts in evidence or by common sense. For example, although Thompson admitted supplying the cocaine in powder form to appellant, the evidence plainly showed that appellant had been arrested with crack cocaine in his possession. Thompson explained this discrepancy by stating that after he sold appellant the cocaine in powder form, he left to get more cocaine because he "had someone else I had to see that day." When Thompson returned, appellant told him he had been waiting for a telephone call and then they would leave. Thompson said that he did not see appellant "cook" the cocaine powder into crack cocaine, but the jury could reasonably infer that appellant must have converted the powder cocaine into crack cocaine during the time that Thompson left to meet his party. *Page 8 
 {¶ 11} Even though Thompson had been arrested in possession of a large quantity of crack cocaine, the evidence showed that appellant possessed his own crack cocaine. Thompson left the car while appellant made his deal with the informant, so only appellant could have been in possession of the crack cocaine recovered from the driver's side floor of the car where appellant had been sitting. The weight of the crack cocaine found in the car matched the amount that the informant told the police he had arranged to buy from appellant. The location of that crack cocaine — on the floor of the driver's side of the car — would be consistent with someone dropping the drugs upon having been discovered. Appellant's flight from the scene, including his attempt to avoid identification by the temporary license tag on his car, further suggests guilt.
 {¶ 12} We also reject appellant's arguments that the police testimony lacked credibility because the state did not offer into evidence any voice recordings from the drug deal. Those recordings, if any, were unnecessary given the testimony of one of the officers that he actually listened in on the conversation over the radio. That officer testified at trial and said that he had been the informant's handler and arranged the details of the police response. By listening in on the radio, this officer had first-hand knowledge of what transpired in the car. Any other evidence would have been cumulative.
 {¶ 13} Appellant's remaining arguments raise niggling issues of credibility which, given the overwhelming strength of the state's case as previously detailed, do *Page 9 
not compromise our confidence in the verdict. We have no basis for finding that the jury lost its way by finding appellant guilty.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The state's forensic laboratory representative testified that the crack cocaine had been weighed twice: once immediately after arrest and again on the day of trial. The crack cocaine weighed 124.11 grams after arrest. On the day of trial, the crack cocaine weighed 113 grams. The representative explained the difference in weight as water loss from evaporation. *Page 1